UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ORLAND ACQUISITIONS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:08 CV 58 |
| HILCO INDUSTRIAL, LLC, and PFI SALES, LLC, | ) |
| Defendants. | ) |

## ORDER and OPINION

Plaintiff Orland Acquisitions, LLC ("Orland") alleges that defendants Hilco Industrial, LLC ("Hilco") and PFI Sales, LLC ("PFI") converted several items of its property including a compactor, air compressors, an air dryer, a water conditioner, exhaust fans, and metal desks, tables, and chairs. The alleged facts in the case were put into motion by the parties' interactions with ASIMCO Camshaft Specialties, Inc. ("ASIMCO"), a company that declared bankruptcy. Orland alleges that it bought a building from ASIMCO and rented the space back to ASIMCO. Orland claims that it acquired the property in question here as part of that real estate transaction with ASIMCO. Later, ASIMCO declared bankruptcy and, under the authorization of a bankruptcy court, Hilco and PFI claim that the items they allegedly converted were sold to Hilco pursuant to a bankruptcy sale. After the bankruptcy sale, Orland alleges that PFI entered the building and then Hilco and PFI sold or scrapped some of the items that Orland claims to have owned.

Orland initiated this case against Hilco and PFI and moved for partial summary

judgment (Pl.'s Mot. for Summ. J., DE # 48) and defendants Hilco and PFI filed a joint response on July 27, 2009. (Def.s' Resp. in Opp'n of Summ. J., DE # 52). Orland never replied to the response. For the following reasons, the motion for partial summary judgment will be **DENIED**.

I.     BACKGROUND

The facts discussed herein are either undisputed, or, when in dispute, resolved in favor of the non-moving parties, Hilco and PFI. *See Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (noting that during summary judgment the court construes all facts in the light most favorable to the nonmoving party). Where necessary, the court has included some facts as Orland sees them in order to explain the parties' dispute, but the court has not used Orland's version to resolve the motion of summary judgment.

   *A.     Factual Background*

Orland claims to own a building located at 9670 Maple Street, Orland, Indiana[1] ("the premises"). (Pl.'s Mem. in Supp. of Mot. for Summ. J., DE # 49 at 1.) To prove ownership of the building and the items at issue here, Orland cites to its answers to Hilco's interrogatories. (Pl.'s Mem. 2; Pl.'s Answer to Hilco's Interrogs. No. 1a, 1b and 1c, Ex. 1 to Pl.'s Mem., DE # 49-2 at 1-2.) Interrogatory 1a asked Orland to list all of the items that it believed Hilco or PFI stole, converted, or removed from the premises. (*Id.* at 1.) Orland responded by listing all of the items at issue and their corresponding

---

[1] Hilco and PFI assert that the building is located at 9670 Grand, Orland, Indiana. (Def.s' Resp. 1, 4.) Regardless, the parties seem to have a mutual understanding as to what building is involved in this suit.

estimated value. (*Id.* at 1-2.) Interrogatory 1b asked Orland to state the date it acquired the items, and interrogatory 1c asked Orland to state the manner by which it acquired the item. (*Id.* at 1.) Orland responded that the items were acquired on February 21, 2006 through the "purchase of real estate and contents." (*Id.* at 2.)

Hilco and PFI question Orland's ownership of the building, stating that "Orland supposedly purchased the [p]roperty" through the Purchase Agreement Commercial-Industrial Real Estate ASIMCO/Hanning and Bean (the "purchase agreement") with ASIMCO and pointing out that Orland is not a named party to the agreement. (Def.s' Resp 3-4; Purchase Agreement, Ex. 5 to Def.s' Resp. 2.) Orland does not refer directly to this agreement in its summary judgment briefing.

Ownership of the building and the purchase agreement are important because, as stated above, Orland claims to have acquired the items of property in dispute here through the purchase of the building. (Pl.'s Mem. 3; Pl.'s Answer to Hilco's Interrogs. No. 1a, 1b and 1c.) The real estate purchase agreement addresses property beyond the buildings themselves. It identifies the property being sold as, in relevant part, "the property commonly known as the ASIMCO - formerly Federal Mogul [-] located at 9670 Maple Street, Orland, Steuben County, Indiana together with all buildings and permanent improvements and fixtures attached thereto." (Purchase Agreement 2.) It also states that items of personal property included in the sale are "[e]lectrical distribution and buss bar and anything necessary for the operation of the building such as heaters and lights." (*Id.*) The purchase agreement also states "[a]ll other personal

3

property and the following additional items are EXCLUDED from the sale: None." (*Id.*) Orland argues that the transaction for real estate and its contents included the following items at issue here:

    1 Huge Pac Compactor;

    1 Quincy 5 h.p. air compressor;

    1 Zurn air dryer;

    1 water conditioner;

    5 exhaust fans;

    2 Joy h.p. air compressors ;

    Metal desks, tables, and chairs. (Pl.'s Mem. 3.)

Orland claims that it leased the premises to ASIMCO in February, 2006 (*Id.* at 2), and that the items in question were located on those premises. (*Id.* at 3.)

On the other hand, Hilco and PFI assert that the items were owned by ASIMCO immediately prior to the sale to Hilco and that ownership of the items was transferred to Hilco pursuant to a bankruptcy sale. (Def.s' Resp. 4.) ASIMCO filed for bankruptcy protection in December, 2006, and its Chapter 11 case was converted into a Chapter 7 case on or about October 9, 2007. (*Id.* at 2-3; Am. Compl. in Ex. 2 to Pl.'s Mem, DE # 49-3 at 1.) On June 20, 2007, ASIMCO filed a Motion for Entry of an Order Authorizing Sale of Property to Hilco Industrial, LLC Outside of the Ordinary Course of Business and Free and Clear of All Liens, Claims and Encumbrances, and Related Relief in the United States Bankruptcy Court of the Eastern District of Michigan ("the sales motion") in the

bankruptcy court. (Pl.'s Mem. 3; Sales Motion in Ex. 3 to Pl.'s Mem., DE # 49-4.) In the sales motion, ASIMCO asked the bankruptcy court, pursuant to 11 U.S.C. § 363(b), to allow it to sell substantially all of its machinery and equipment and all of its computer software, programming, information, and similar intellectual property embedded into that machinery and equipment to Hilco under an Asset Purchase Agreement ("APA"). (*Id.* at 8-10.) A copy of the APA was attached to the sales motion. (*Id.* at 19.) Orland received notice of the sales motion and the APA from the bankruptcy court and did not object to it. (Def.s' Resp. 5; Pl.'s Answer to Hilco's Interrogs. No. 8 in Ex. 2 to Def.s' Resp. DE # 52-5 at 7.)

It is undisputed that the bankruptcy court issued an Order Authorizing Sale of Property of the Estate to Hilco Industrial, LLC Outside of the Ordinary Course of Business and Free and Clear of All Liens, Claims and Encumbrances (the "sales order"), which authorized the APA. (Def.s' Resp. 5; Pl.'s Mem. 3; Sales Order in Ex. 2 to Def.s' Resp., DE # 52-3 at 3.) The sales order stated that the sale of ASIMCO's assets to Hilco under the APA:

> shall be free and clear of all liens; claims; encumbrances; and other interests, including all tax liens for personal property taxes; (collectively the 'Liens') with such Liens attaching only to the sale proceeds in the same validity, priority, force[,] and effect as immediately prior to such sale, subject to any claims and defenses any parties have with respect thereto.

(Sales Order 3-4.) The order also stated "Hilco is a purchaser in good faith of the [a]ssets and is entitled to all protections afforded by section 363(m) of the Bankruptcy Code." (*Id.* at 4.)

5

Hilco and PFI contend that the water conditioner, five exhaust fans, and two Joy 50 h.p. air compressors are included in the APA's general description of the property sold by ASIMCO to Hilco:

> [A]ll machinery, equipment, all rolling stock, fork lifts, manlifts, trucks, trailers, inspection tools, gauges, jigs, trade fixtures (but excluding any plumbing and electrical fixtures, heating, ventilation and air conditioning, wall and floor coverings, walls or ceilings and other fixtures not constituting trade fixtures), tools, vidmar cabinets with contents, stores, spare parts, and other personal property owned by Seller on a floor to ceiling, wall to wall, basis located at Seller's facility located at 11118 U.S. Highway 3, Grand Haven, Michigan and Seller's warehouses located at 9670 Grand, Orland, Indiana . . . including those assets set forth on Exhibit A attached hereto, but excluding those assets listed on Exhibit B hereto . . . .

(APA in Ex. 1 to Def.s' Resp., DE # 52-2 at 2.)

Hilco and PFI further contend that the Huge Pac Compactor, Quincy 5 h.p. air compressor, the Zurn air dryer and the metal desks, tables, and chairs appear in Exhibit A to the APA, which is a list of the assets located at the premises and included in the sale, as items 28, 54 and 55. (Def.s' Resp. 4, DE # 52, APA 34, 36, DE # 52-2.) Item 28 is described as "1 Heil Compactor, S/N TOI1957-33, Asset HPC20." (*Id.* at 34.) Item 54 is described as "1 Quincy Horizontal Mounted Air Compressor (plate not legible), approx. 3-5 HP." (*Id.* at 36.) Item 55 is described as "1 1987 Zurn Model R-100A S/N 16607 Air Dryer, 2 HP W/Water Conditioner & Vertical Air Receiver Tank." (*Id.* at 36.)

Orland relies on a deposition of Hilco's agent Charles H. Thornton to show that Hilco removed, scrapped, or sold all of the contested items. (Pl.'s Mem. 3-4; Ex. 6 to Pl.'s Mem, Charles H. Thorton's Dep. 54-65, DE # 49-9.) Hilco and PFI do not dispute this.

6

B. *Legal Background*

Orland moved for summary judgment on its claim of tortious conversion, reserving the issues of damages and criminal conversion for trial. (Pl.'s Mem. 5.) In its one-page argument, Orland contends that it is "undisputed" that it was the lawful owner of the items of property listed and that Hilco sold or scrapped the items without Orland's consent. (*Id.*) Orland argues that mens rea is not an element of a tortious conversion and good faith is not a defense. (*Id.*)

In response, Hilco and PFI argue that Orland has not met its burden of showing that there is no issue of material fact as to conversion because Orland has not proven that it had title to the property in question. (Def.s' Resp. 7.) They argue that Hilco was a good faith purchaser of the property and is protected by Section 363(m) of the Bankruptcy Code from a collateral attack on the order authorizing a bankruptcy sale. (*Id.* at 7-9.)

II. **STANDARD OF REVIEW**

Subject matter jurisdiction over this case in this court is based on diversity. (Pl.'s Am. Compl. 3, DE # 8.) Under the rule developed in *Erie Railroad v. Tompkins*, 304 U.S. 64, (1938), a federal court sitting in diversity must apply substantive state law in the absence of any countervailing federal policies. *See Hanna v. Plumer,* 380 U.S. 460, 473 (1965). Thus, in this case, federal law provides the summary judgment standard and state law provides the standard for conversion with consideration to implicated federal bankruptcy law. Both parties rely on Indiana's law of conversion. Thus, because the

7

parties seem to agree that the substantive law of the forum state, Indiana, applies and no party points out significant differences between Indiana and Michigan or Illinois law, the court will apply Indiana law to the issue of conversion. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n. 7 (7th Cir. 1993); *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state.").

Under federal law, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" those materials listed in RULE 56(c) which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party cannot establish an essential element of its claim, RULE 56(c) requires entry of summary judgment for that claim. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

Once the moving party has met its burden, to successfully prevent summary judgment the nonmovant must present "specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). In doing so, "the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d

8

1099, 1104 (7th Cir. 2008). When considering a motion for summary judgment, the court views the record and makes all reasonable inferences in a light most favorable to the nonmovant. *Popovits*, 185 F.3d at 731.

### III. ANALYSIS

#### A. Proof of Ownership for Conversion

Under Indiana law, "[t]he essence of every conversion is the wrongful invasion of the right to, and absolute dominion over," the property of another. *Chicago I. & L. Ry. Co. v. Pope*, 188 N.E. 594, 594 (Ind. Ct. App. 1934) (quoting *First Nat'l Bank v. Ransford*, 104 N.E. 604, 605 (Ind. Ct. App. 1913). A party commits tortious conversion by appropriating another person's personal property for its own use or benefit, destroying the property, exercising dominion over the property in exclusion and defiance of the lawful owner's rights, or by withholding the property from the owner under a claim and title inconsistent with those of the lawful owner. *Shank Fireproof Warehouse Co. v. Harlan*, 29 N.E.2d 1003, 1005 (Ind. Ct. App. 1940). Mens rea is not an essential element of conversion and good faith is not a defense. *Ind. & Mich. Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 610 (Ind. Ct. App. 1987).

Proof of a right in the property is "the salient feature of a conversion action." *Rose Acre Farms, Inc. v. Decatur County Farm Coop. Ass'n, Inc.*, 467 N.E.2d 26, 27 (Ind. Ct. App. 1984). To establish this, Orland must show that it had superior title, either general or specific, and a right of immediate, unqualified possession to the property. *Noble v. Moistener*, 180 N.E.2d 620, 621 (Ind. Ct. App. 1979); *Howard Dodge & Sons, Inc. v.*

9

*Finn*, 391 N.E.2d 638, 641 (Ind. Ct. App. 1979). *See also Yoder Feed Serv. v. Allied Pullets, Inc.,* 359 N.E.2d 602, 604 (Ind. Ct. App. 1977) ("The essential elements which need to be proved by the moving party in order to maintain the action [of conversion] are an immediate, unqualified right to possession resting on a superior claim of title.").

Orland has not made a showing that there is no material issue of fact as to its ownership of the property in question. Orland states simply that "[i]t is undisputed in this case that Orland was the lawful owner and possessor of the items of property listed." (Pl.'s Mem. 5.) The only support for this assertion that Orland offers is its answers to Hilco's interrogatories.[2] (*Id.* at 3; Pl.'s Answer to Hilco's Interrogs. No. 1a, 1b and 1c, DE # 49-2.) There, Orland identifies the property it believes Hilco and PFI converted, the date of the conversion, and the manner by which Orland acquired the items - "purchase of real estate and contents." (*Id.*) Orland has not produced the deed or purchase agreement related to the premises. Orland did not file a reply to Hilco and PFI response and has not otherwise stated whether or not the purchase agreement provided by defendants is relevant to its claims of ownership.

Hilco and PFI have produced sufficient evidence to allow a reasonable inference that the purchase agreement is the document that Orland was referring to in its interrogatory answers. There Orland stated that it bought the real estate with which the

---

[2] The court may rely on interrogatories in ruling on a summary judgment motion as long as the information in the interrogatories is not hearsay and is otherwise admissible at trial. *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008). Orland's interrogatories were sworn to by Orland's Vice President, Bill Bean. From the evidence presented to the court, it is not clear that Mr. Bean has personal knowledge of the purchase of the real estate and its contents. *See Id.*

10

property came for $725,000 (Pl.'s Answer to Hilco's Interrogs. No. 8) and the purchase agreement presented by Hilco and PFI state that the property was sold for $725,000. (Purchase Agreement 2.) In identifying from whom it purchased the property, Orland states that "ASC Orland, Inc. was the entity on the deed; ASIMCO Crankshaft Specialties Inc. was the entity on the Purchase Agreement." (Pl.'s Answer to Hilco's Interrogs. No. 8.) "ASIMCO Crankshaft Specialties Inc." is listed as the seller on the purchase agreement. (Purchase Agreement 2.)

The purchase agreement produced by Hilco and PFI (Def.s' Resp 3-4) shows that there is still a disputed issue of material fact as to Orland's ownership of the property in question. Assuming the purchase agreement is the real estate sale agreement Orland mentions, it does not clearly establish that Orland owned the property in question.

First, the purchase agreement does not name Orland as a party or definitively show that the items in question were included in the agreement. (Def.s' Resp 3-4; Purchase Agreement 2.) Second, it does not clearly include the items. In addition to the buildings at 9670 Maple Street, the purchase agreement states that it covers all "permanent improvements and fixtures attached thereto." (*Id.*) According to the purchase agreement, items of personal property included in the sale are "[e]lectrical distribution and buss bar and anything necessary for the operation of the building such as heaters and lights." (*Id.*) The purchase agreement states that "[a]ll other personal property and the following additional items are EXCLUDED from the sale: None." (*Id.*) Although fixtures are included, Orland has not attempted to show that any of the items

in question are fixtures. *See Howard Dodge & Sons, Inc. v. Finn*, 391 N.E.2d 638, 641 (Ind. Ct. App. 1979). Orland doesn't argue that the property in question, if it is personal property, was "necessary for the operation of the building." Orland has not established that the property in question was either fixtures or personal property of the type included in the agreement. Thus, Orland has not shown that it was a party to the purchase agreement or that the items in question were covered by the agreement.

What's more, Hilco and PFI have produced some documents that may show that they acquired legal ownership of the items in question during a bankruptcy sale with ASIMCO as outlined in the APA. (Def.s' Resp. 4.) This showing is important, as discussed in the next section, because it could show that Hilco and PFI had superior title to the items. Hilco and PFI contend that the water conditioner, five exhaust fans, and two Joy 50 h.p. air compressors are included in the APA's general description of the property, which included machinery, equipment and trade fixtures. (APA 2.) This description states that plumbing and electrical fixtures, heating, ventilation and air conditioning, and other fixtures not constituting trade fixtures are excluded from the agreement. (*Id.*) Thus, it might be argued that this description excludes the items listed above, but Orland fails to make such an argument or present any evidence that would support it.

Hilco and PFI contend that the remaining items, the Huge Pac Compactor, Quincy 5 h.p. air compressor, the Zurn air dryer and the metal desks, tables, and chairs, are specifically listed as assets included in the sale. (Def.s' Resp. 4; APA 34, 36.) The first

12

three items do appear to be listed directly as assets covered by the APA. (*Id.* at 34, 36.)

As Hilco and PFI point out, Orland received notice of the sales motion, to which the APA was attached, from the bankruptcy court and did not object to it. (Def.s' Resp. 5; Pl.'s Answer to Hilco's Interrogs. No. 8 in Ex. 4 to Def.s' Resp., DE # 52-5 at 7.) The court makes no finding as to whether or not Orland had or did not have superior title to the property over Hilco or PFI. The court simply finds that Orland has not made a sufficient showing to establish that there is no material dispute of fact as to the ownership of the property.

    *B.*    *Good Faith Purchaser Status under Section 363(m) of the Bankruptcy Code*

Hilco and PFI argue that Hilco has good faith purchaser status under Section 363(m) of the Bankruptcy Code and is thus protected against liability for conversion. (Def.s' Resp. 8.) Further, if Hilco and PFI can show that the items were covered by the APA, it may also be able to show that it had superior title to them as a good faith purchaser. Section 363(m) states that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

The bankruptcy court authorized the APA between ASIMCO and Hilco (Sales Order 2), apparently under 11 U.S.C. § 363(b) (Sales Motion 9), and deemed Hilco a good faith purchaser in a bankruptcy sale under Section 363(m). (Sales Order 4.) Section 363(m) applies specifically to appeal of Section 363(b) sales orders and Orland is obviously not

appealing the bankruptcy courts order in this conversion order. However, as discussed below, the policies embodied by Section 363(m) are relevant to other forms of attack on Section 363(b) sales order.

Hilco and PFI's good faith purchaser argument is based on the premise that by filing this conversion suit, Orland is in some way challenging the sales order authorizing the APA. (Def.s' Resp. 8.) Although Orland mentions the Sales order and the APA (and even attaches them to its summary judgment brief) it does not address the possible inclusion of the items in the APA and does not specifically attack the APA. (Pl.'s Mot. 3.) Thus, it is not clear that Orland is attempting to collaterally attack the Sales order or even that the property at issue is covered by the APA. In order to determine whether Hilco's good faith purchaser status presents a disputed question of material fact as to whether Hilco and PFI are liable for conversion, the court will analyze whether Orland is challenging the bankruptcy court's Sales order, the ways in which it could challenge the Sales order, and how Hilco's good faith purchaser status would affect these challenges.

First, as noted above, it is not clear that all or any of the items at issue were covered by the APA. Orland has not presented any undisputed evidence from which the court could conclude that the items in question here were not covered by the APA. For the purposes of deciding summary judgment, the court, making inferences in favor of the non-moving parties, must assume that the items are covered by the APA. Therefore, at this stage, the court assumes that the items in dispute here are covered by

the APA authorized by the Sales order, and thus Orland is challenging the Sales order, rendering Hilco's status as a good faith purchaser to the APA relevant.

Hilco and PFI next point to the limitations on collaterally attacking a bankruptcy sale order. Attempts to collaterally attack a bankruptcy sale are governed by FEDERAL RULE OF CIVIL PROCEDURE 60(b). *Id.* at 644; FED. R. BANKR. P. 9024 (FED R. CIV. P. 60 "applies in cases under the Code."). Again, Orland has not specifically stated that it is collaterally attacking or even seeking relief from the bankruptcy court's judgment. However, it doesn't matter if Orland has not labeled its action a collateral attack on the Sales order, as long as it is attempting to seek damages caused by a transaction authorized by the order. The Seventh Circuit characterized a lawsuit that did not seek to rescind a sale but instead sought damages from those who benefitted from the sale as a "thinly disguised collateral attack on the judgment confirming the sale." *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988). Similarly, Orland does not appear to be trying to rescind the sale, but it is seeking treble damages on its conversion claim. (Pl.'s Am. Compl. 5.) Thus, assuming the items at issue are covered by the APA, Orland's conversion suit may be categorized as a disguised collateral attack on the bankruptcy court's Sales order.

Hilco and PFI point out two ways in which a collateral attack to the sale order could be barred. First, *res judicata* bars a "party to a sale proceeding, a successor thereto, or anyone else that could be classified as being in privity with such a party" from attacking a sales order. *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988).

15

However, Orland was not a party to the sale proceeding, so it would not barred by *res judicata*. *Id.* at 1017. But the second argument Hilco and PFI make does appear to apply to Orland. A collateral attack by a non-party is still barred because section 363(b) sale is an *in rem* proceeding that "transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *Id.* at 1017.

Further, the Seventh Circuit has stated that "[t]he strong policy of finality of bankruptcy sales embodied in section 363(m) provides, in turn, strong support for the principle that a bona fide purchaser at a bankruptcy sale gets good title, . . . even if the section does not of its own force preclude collateral attack on such sales." *In re Edwards*, 962 F.2d at 645 (internal citations omitted). Accordingly, if the items at issue are covered by the APA, not only would Orland probably be barred from collaterally attacking the Sales order, but Hilco and PFI may have superior title to the items.

The only way that Orland could attack the sales order now is through a Rule 60 relief from judgment motion in the bankruptcy court. *Met-L-Wood*, 861 F.2d at 1018. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 908-909 (7th Cir. 1990) ("except for the narrow exceptions set forth in Rule 60(b), bankruptcy sales, if they are to fulfill their role, must be final when made.")

Orland has not addressed Hilco and PFI's good faith purchaser argument. Again, the court notes that there is a question of fact as to whether the property at issue here is covered by the APA. But what is clear is that Orland has not shown that there is no

16

genuine question of material fact as to whether Hilco was a good faith purchaser and thus protected from conversion liability.

## IV. CONCLUSION

In total, Orland has presented the court with two and half pages of facts and one page of legal argument supporting its summary judgment motion. The factual support that Orland has presented does not establish that there are no disputed issues of material fact entitling it to victory as a matter of law.

For the foregoing reasons, Orland's motion for partial summary judgment (DE # 48) is **DENIED**.

**SO ORDERED.**

Date: March 15, 2010

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT